BRENGLE *Adm'r of* BRENGLE, *vs.* WM. MCCLELLAN, *et al.*
*June,* 1836.

A judgment of the *State* of *Pennsylvania,* conclusive between the parties in that *State,* and having a priority over bonds, single bills, and simple contract debts in that *State* as against the assets of the defendant in the hands

of his executor, is considered only as a simple contract debt in the distribution of assets in this *State*.

The "*full faith and credit*" to be given in each *State* to the judicial proceedings of every other *State*, as declared by the 1st sec. of the 4th article of the Constitution of the *United States*, and the act of Congress of the 26th May, 1790, has never been carried further, than to give to the judgment of another *State*, the same conclusive effect and obligatory force, in every *State* of the Union, that it had in the *State* in which it was rendered.

APPEAL from FREDERICK county court.

The appellees on the 26th of October, 1833, instituted an action of debt against the appellant, to recover of him as the administrator of *Peter Brengle*, the amount of a judgment which the appellees had recovered against the deceased in his life in the Supreme court of *the State of Pennsylvania*.

The case was submitted to the county court upon a statement of facts by which it appeared, that the plaintiff instituted a suit upon contract against *Peter Brengle* in his life time, in the Circuit court of *Adams county*, in the *State of Pennsylvania*, and on the 6th of March, 1832, duly recovered a judgment against him, which was subsequently affirmed on appeal, by the *Supreme court of the State of Pennsylvania* for the western district, in the life time of the said *Peter*. That prior to, and at the time of the rendition of said judgment in the Circuit court, and of the affirmance thereof as aforesaid, the deceased *Brengle* was a citizen and resident of the *State* of *Maryland*, and so continued until his death, which occurred on the 6th of March, 1833. That upon the grant of letters of administration on the estate of *Peter Brengle* to the present appellant, the record of the judgment so as aforesaid recovered against his intestate, certified and authenticated, according to the act of Congress of the 26th of May, 1790, and passed by the Orphans' court of *Frederick* county, was duly shown to him, and payment thereof demanded. It was further admitted that the *Pennsylvania* judgment was final and conclusive between the parties in that *State*, and by the laws thereof judgments are payable by executors and administrators, in the settlement of the estates of deceased persons, in preference to bonds,

single bills and simple contract debts. That the personal estate of the deceased is sufficient for the full payment of all judgments and decrees, inclusive of the judgment in favour of these plaintiffs; but not sufficient, with the aid of the real estate for the entire satisfaction of all claims against the deceased.

The question therefore is, whether the judgment thus rendered in *Pennsylvania* is entitled to be paid as a judgment within the meaning of the act of 1798, ch. 101, sub. ch. 8, sec. 17, or not.

If it is, then judgment shall be rendered for the full amount of the aforesaid judgment, with interest and costs. If not, then for a proportion of assets, and costs, reserving to either party the right of appeal.

Upon this statement, the County court gave judgment for the full amount of the plaintiff's claim, and the record was thereupon, brought by the defendant before this court.

The cause was argued before STEPHEN, ARCHER, DORSEY, and CHAMBERS, Judges.

R. JOHNSON for the appellant.

Independently of the 1st section of the 4th article of the Constitution of the *United States*, and the act of Congress of 1790, there would be no pretence for claiming a preference for this judgment. It would be regarded as a foreign judgment, and of no more dignity than a simple contract debt; and the Constitution and act of Congress referred to, have no effect, except in relation to the mode of proving them. When proved in the mode prescribed, their authenticity cannot be questioned, but the *effect* of the record remains unchanged. *Mills vs. Duryee*, 7 *Cranch*, 481. *Pawling vs. Bird, ex'rs*, 13 *Johns. Rep.* 192. *Ib.* 205. *Starbuck vs. Murray*, 5 *Wendell*, 154. *Hall vs. Williams*, 6 *Pick. Rep.* 232. *Shumway, et al, vs. Stillman*, 6 *Wend.* 447. *Grun vs. Sarmiento*, 1 *Peters' C. C. R.* 74. 3 *Story Con.* 177 *to* 183.

The question is, whether this judgment shall have the

same effect here, as would be given to it in *Pennsylvania*? If it has, then the administration of estates in *Maryland*, must be regulated, by the laws of other states, and not by our own; though the rule is, that the law of the place, where the administration is had is to govern. Suppose judgments were not entitled to a preference in *Maryland*, would it be said, that a judgment rendered in any other *State*, should be preferred, because by the laws of such *State* the preference is allowed? Would not this be making the rule of distribution in *Maryland*, depend upon the fluctuating laws of other *States*. The inconvenience of such rule is perfectly obvious, and would be severely felt.

Wm. Schley for the appellees.

This is the case, not of a foreign, and inconclusive judgment, but of a judgment, which by the Constitution and law is to have the *same effect* here, as in Pennsylvania. It is in both *States* entitled to the rank of a debt of record, and comes within the provisions of the act of 1798, sub ch. 8, sec. 17. If it is not to be so classed, it is nothing, and the creditor is without remedy, his simple contract claim being merged in the judgment. He is therefore a judgment creditor or nothing. The case stated shows, that in *Pennsylvania* judgments are entitled to a preference over other claims. That is the effect of the judgment there, and the Constitution declares, that whatever may be its effect there, the same shall be given it, in the other *States*. The judicial expositions of this part of the Constitution have been accordingly. *Mills vs. Duryee*, 7 *Cranch*, 481. *Hampton vs. McConnell*, 3 *Wheat.* 234. 1 *Story's Con.* 183. *Wernwag vs. Pawling*, 5 *Gill and Johns.* 507. *Trasher vs. Everhart*, 3 *Gill and Johns.* 244.

Stephen, Judge, delivered the opinion of the court.

The only question involved in this case is, whether a judgment rendered in a sister *State*, and authenticated according to the act of Congress, is entitled to a preference, or priority,

like judgments obtained in this *State* against the deceased in his life time, in the administration of his assets by his executor or administrator. The court below were of opinion that it stood in that respect, upon the same footing as a domestic judgment, and was entitled to the same priority. The decision of this important and interesting question, renders it necessary to ascertain what is the true construction of the Constitution of the *United States,* and the act of Congress passed in pursuance thereof.

The first section of the 4th article declares, " that full faith and credit shall be given in each *State,* to the public acts, records, and judicial proceedings of every other *State,* and the *Congress* may by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." In pursuance of this power, *Congress,* by an act passed the 26th of May, 1790, after prescribing the mode of proof declare, " that the said records, and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them, in every court within the *United States,* as they have by law or usage in the courts of the *State,* from whence the said records are, or shall be taken." Upon the true construction of this article of the Constitution, and the acts of Congress made in pursuance of it, depends the decision of the question, whether a judgment rendered in any one of the *States* of this Union, is to be considered as possessing here, all the attributes, and incidental privileges, ascribed to it by the municipal policy, or local laws of the *State,* where it was rendered? In giving a judicial construction to this article of the Constitution, and act of Congress, we find that eminent, and distinguished judges, have entertained the opinion, that it was not even intended to give to such a judgment a binding and conclusive effect, as to every thing decided by it; for in the 1 *New York Term Rep.* 460, we find a majority of the judges of the *Supreme Court* of that *State* determined, that such a judgment was only to be considered as a foreign judgment, importing nothing more than *prima facie* evidence of the

debt, and therefore examinable in a suit instituted upon it. This decision is referred to, not because it is now to be considered as law, because the principle established by it, has long since been overruled by a decision of the *Supreme court of the United States*, but to show that at an early period after the adoption of the Constitution of the *United States*, the judgment of a sister *State* was not considered as possessing the quality of being intrinsically conclusive, although authenticated and proved in the manner prescribed by the act of Congress.

Prior to the adoption of the Constitution of the *United States*, a similar provision was made in the articles of confederation. The fourth article declared, that full faith and credit shall be given in each of these *States*, to the records, acts and judicial proceedings of the courts and magistrates of every other *State*. In giving a construction to these words, *Judge Shippen* says, in 1 *Dallas* 191, " the articles of confederation which direct that full faith and credit shall be given in one *State* to the records, acts and judicial proceedings of the others, will not admit of the construction contended for, otherwise executions might issue in one *State*, upon the judgments given in another, but seem chiefly intended to oblige each *State* to receive the records of another as full evidence of such acts and judicial proceedings." So in *Kirby's Rep.* 126, in construing the same article of the old confederation, the court say, " full credence ought to be given to judgments of the courts in any of the *United States*, where both parties are within the jurisdiction of such courts, at the time of commencing the suit, and are duly served with the process, and have, or might have had a fair trial of the cause." Both of these cases were decided in 1786, under the old articles of confederation, and shew the construction which was given at that day to the expressions, " full faith and credit," as applied to records and other judicial proceedings ; and although a different construction now prevails, yet it is apprehended that the doctrine never has been carried further, than to give to the judgment

of another *State*, the same conclusive effect, and obligatory force in every *State* in the Union, that it had in the *State* where it was rendered.

To extend the principle further, and give it all the latitude contended for in this case, would give to the jurisdiction of our sister *States*, an extra-territorial operation, and put it in their power to make laws for us, not only without our consent, but contrary to our interior policy and municipal legislation. In favour of a doctrine pregnant with such mischievous consequences, we are aware of no consideration sufficiently operative or powerful to induce its adoption. In 3d *Story's Comm. on the Consti. U. S.* 183, that distinguished judge speaking of the provision of the act of congress in relation to this subject says, "It has been settled upon solemn argument, that this enactment does declare the effect of the records as evidence when duly authenticated. It gives them the same faith and credit, as they have in the *State* courts from which they are taken. If in such court they have the faith and credit of the highest nature, that is to say of *record* evidence, they must have the same faith and credit in every other court; so that *Congress* have declared the effect of the records, by declaring what degree of faith and credit shall be given to them. If a judgment is conclusive in the *State* where it was pronounced, it is equally conclusive every where. If re-examinable there, it is open to the same inquiries in every other *State*. It is therefore put upon the same footing as a domestic judgment." The terms "faith and credit," as used in the Constitution and act of congress, evidently point to the attributes and qualities, which such records and judicial proceedings shall have as *evidence*, and such appears to have been the construction given to them in the Commentaries.

In 7th *Cranch*, 480, the question was put to rest, and the court there decided, that the plea of *nil debet*, was inadmissible to an action founded on a judgment of another *State*. In delivering the judgment of the court in that case, *Mr. Justice Story*, says,

"It remains only then to inquire in every case, what is the effect of a judgment in the *State* where it is rendered. In the present case, the defendant had full notice of the suit, for he was arrested and gave bail, and it is beyond all doubt, that the judgment of the *Supreme Court of New York*, was conclusive upon the parties in that *State*. It must therefore be conclusive here also." It is true the question here decided was one of pleading only, and the decision can only be considered as an authority upon the Constitution and the law, to that extent. But it is a strong expression of the opinion of the court, that according to the true and sound construction of the Constitution and act of Congress, they could only be construed to operate, as defining the character of the proceedings there referred to, as evidence, and would not bear the latitude of construction now attempted to be given to them. So also in 3*d Wheat.* 234, *Chief Justice Marshall*, in delivering the opinion of the court, says, "this is precisely the same case as that of *Miles vs. Duryee*. The court cannot distinguish the two cases. The doctrine there held, was, that the judgment of a *State* court should have the same credit, validity, and effect, in every other court in the *United States*, which it had, in the *State* where it was pronounced, and that whatever pleas would be good to a suit thereon in such *State*, and none others, could be pleaded in any other court in the *United States*. *Chancellor Kent*, 1*st Com.* 260, speaking upon this subject, says, " it was declaring the effect of the record, to declare the faith and credit that were to be given to it. The Constitution intended something more than to make the judgment of the *State* courts *prima facie* evidence only. It contemplated a power in *Congres*, to give a conclusive effect, to such judgments. A judgment is therefore conclusive in every other *State*, if a court of the particular *State* where it was rendered, would hold it conclusive. *Nil debet*, is not a good plea in a suit on a judgment in another *State*, because not a good plea in such *State*. *Nul tiel record*, is the proper plea in such a case." It thus appears to be the opinion of this distinguished writer, that the Constitution intended to vest in

*Congress* the power of giving a conclusive effect to the judgments of other *States,* and to prevent them from ranking as foreign judgments only, and being considered as nothing more than *prima facie* evidence. But if such was not exclusively, the design and object of those, who framed the Constitution, can it be supposed, that they intended, or contemplated to vest in *Congress* the power of giving to a judgment obtained in one *State,* all the legal properties, rights, and attributes, when used in another *State,* to which it was entitled by the law of the *State* where it was rendered? We think that such could not have been the purpose or intention of those enlightened men who framed that instrument; more especially, as such a principle in its tendency and operation, might lead to a conflict and collision between the laws of the different *States,* in the administration of their internal policy, and domestic concerns; and it would in effect, put it in the power of one *State,* to pass laws to regulate and control the administration of assets in another *State*; which would be an anomaly in jurisprudence, and a violation of the genius and spirit of all our institutions. Strikingly to illustrate the glaring injustice, and unreasonable operation of such a doctrine, it is only necessary to suppose, that by the laws of this *State,* a legal administration of the assets would distribute the same, *pari passu* among all the creditors. Could it be tolerated that a judgment of a sister *State,* where a different rule prevails, should come and sweep away the whole of the assets, to the total exclusion of all the home or domestic creditors?

And yet such might be the operation of the principle, when practically enforced, and carried out to all its legitimate consequences. It is true, that in the case now pending before this court, the laws of *Maryland* and *Pennsylvania* perfectly harmonize, and no such conflict exists; but the case put for illustration might occur, and is a fit and proper one, to test the mischievous operation of the principle; and before this court give their sanction to such a doctrine, it behooves them to look well to all the consequences to which it may lead. It has been asked, if this creditor does not rank with the dignity

of a judgment creditor, how he is to be satisfied? and whether he is to be considered only as a simple contract creditor? If the view which we have taken of the construction of the Constitution, and act of Congress be correct, the answer to this question is an easy one, and can be attended with no great difficulty. Though a judgment, it can rank only as a simple contract claim, in the distribution of the assets; the conclusive effect given to it, by the Constitution and act of Congress as a judgment, not operating to place it upon an equal footing with a judgment obtained in *Maryland*, in the distribution of assets, but leaving it in this respect to the operation of common law principles, according to which it would be considered a foreign judgment, and be paid as a simple contract debt. *Matthews' Pr. Guide to Ex'rs and Adm'rs*, 145, where he says, " a judgment in a foreign country is a simple contract debt here, and ranks only as such." We think that this court have taken a correct view of the meaning of the Constitution and law of the *United States* in 5 *Gill and Johns.* 500, where it is said, " the object of this article of the Constitution, was to give to such judgments full faith and credit; that is, to attribute to them positive, and absolute verity, so that they cannot be contradicted, or the truth of them be denied, any more than in the *State* where they originated." " If a judgment is conclusive in the *State* where rendered, it is equally conclusive every where. If re-examinable there, it is likewise re-examinable here. It is therefore put upon the same footing as a domestic judgment."

There is nothing in this opinion, which gives countenance to the idea, that because by the laws of *Pennsylvania* a judgment there obtained is entitled to a preference in the distribution of *Pennsylvania* assets, that therefore when authenticated according to the act of Congress, it shall have the same effect, and a similar priority in the distribution of *Maryland* assets; nor is the possession of such a quality essential to that full faith and credit, and absolute verity, with which it was the intention of the Constitution and act of Congress to invest it.

We therefore think that the judgment of the court below was erroneous, and ought to be reversed.

**JUDGMENT REVERSED**